### LIGHTERS NOS. 27 AND 28.

### S. H. HARMON LUMBER CO. v. LIGHTERS NOS. 27 AND 28 et al.

#### (Circuit Court of Appeals, Ninth Circuit. August 15, 1893.)

#### No. 87.

MARITIME LIENS—STATE STATUTES—ADMIRALTY JURISDICTION.

A maritime lien against a vessel for supplies, created by a state statute, will not be enforced by the United States courts unless the supplies were furnished on the credit of the vessel. The Samuel Marshall, 54 Fed. Rep. 396, followed.

Appeal from the District Court of the United States for the Northern District of California.

In Admiralty. Libel by the S. H. Harmon Lumber Co. against Lighters Nos. 27 and 28 (John E. Whitney, claimant) for materials furnished to the lighters. The district court dismissed the libel. Libelant appeals. Affirmed.

H. A. Powell, for appellant.
Andros & Frank, for appellee.

Before McKENNA and GILBERT. Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This is an appeal from the decree of the district court for the northern district of California, dismissing the libel against Lighters Nos. 27 and 28 for the price of lumber furnished in the construction of bunkers on said lighters, on the ground that there was not sufficient evidence in the case to show that the lumber was furnished on the credit of the vessels.

From the record it appears, among other things, that John E. Whitney, the owner of the lighters, (claimant and appellee herein,) chartered them to Leale & Shirley; that one Sheerin had a contract with Owens Bros., who were building a sea wall, to furnish them with rock; that Leale & Shirley had a subcontract with Sheerin for the transportation of the rock; that they used the lighters in the transportation of rock from San Quentin to the sea wall at San Francisco under this contract; that the owner of the vessels had no interest in this matter; that the Owens Bros., under their contract, discharged the rock from the lighters, and

in order to facilitate their work they built the bunkers; that Whitney, the owner, made no objections to the building of the bunkers; that appellant, at the request of Owens Bros., furnished the lumber for the construction of the bunkers on the lighters; that the bunkers were not used for the general transportation of merchandise or material to be discharged upon a wharf or upon other boats, but were constructed and available only for the special use and purpose of facilitating the discharging of rock, by dropping it into the water.

Mr. Leale, a witness on behalf of appellant, testified that "rock is frequently carried on these lighters without any bunkers at all, and in this very work on the sea wall. We can only use these bunkers until we have filled in to a certain depth. Then we have to take the bunkers off, and discharge the lighters through the flat of the deck. It is only for the purpose of letting the rock slide off the lighters without shoveling it that these bunkers are put on. These lighters are usually used on the waters here without bunkers to carry rock. At the time I received these lighters, they had no bunkers on; that is, when I agreed to take them." He further testified that he received a letter from Mr. Whitney, dated March 11, 1891, "demanding his charter money on these lighters, and also that the lighters be returned, and that the bunkers which now obstruct them be removed."

Mr. Harmon testified that he sold the lumber on what he considered the credit of James V. Owens, of Owens Bros.; that at the time of selling the lumber he did not make any effort to find out who was the owner of the lighters, and did not make any inquiry as to the relationship that Owens Bros. bore to the lighters; that the Owens Bros. were recommended to him by John Center, and for that reason he did not make further inquiry. It appears from his testimony that Owens Bros. were also buying lumber from appellant for the erection of sidewalks in the city. With reference to the recommendation of Mr. Center, and the sale of the lumber to Owens Bros. for building the bunkers, he testified that he was driving along in a buggy with Mr. Center, who said:

"'Here is Mr. Owens, of Owens Bros. He wants some sidewalk planking.' Of course, I was anxious to sell him the stuff, and I then sold him the lumber. and * * * some time afterwards his brother Frank came to the office with the first order. He says, 'You have furnished my brother with lumber.' He said he would like to get this, and I said, 'All right.' He said, 'It is for my brother and myself.' * * * I did not know anything about them, except from Mr. Center, who had recommended them, and I said, 'I will let you have it.' Question. Then you sold it on what you consider the credit of James V. Owens? Answer. Yes, sir."

He further testified that the lumber was all delivered to the scows before appellant knew that Owens Bros. were not good pay, and, against the objection of appellee, that he had not in any manner released any lien that appellant might have on the scows.

Upon this evidence, we are of opinion that the court did not err in dismissing the libel. The lighters were domestic vessels owned

in San Francisco, and, under the maritime law, material men have no lien for materials or supplies furnished to domestic vessels. The Edith, 94 U. S. 518; The Lottawanna, 21 Wall. 559. But it is claimed by appellant that a lien exists by virtue of the provisions of section 813 of the Code of Civil Procedure of the state of California, which provides that "all steamers, vessels, and boats are liable, * * * (3) for work done or materials furnished in this state for their construction, repair, or equipment," and that "demands for these several causes constitute liens upon all steamers, vessels, and boats." In the view we take of this case, it becomes unnecessary to discuss the question whether or not appellant would, under any circumstances, be entitled to a lien under the provisions of this statute. It may, for the purpose of this opinion, be conceded that the word "equipment," as found in the statute, is susceptible of being so construed as to include the bunkers. But this would not benefit appellant, because the facts are that the lumber sold by appellant for the construction of the bunkers was furnished upon the credit of Owens Bros., and not upon the credit of the vessels. Under the decisions upon this point, it is now, we think, well settled that no lien exists unless the materials are furnished on the credit of the vessel. This is true whether the vessel is foreign or domestic, for courts of admiralty have no jurisdiction to enforce liens, except as admiralty liens, and the provisions of the state law should always be considered and construed with reference to the limitations ordinarily attaching to admiralty liens.

In The Samuel Marshall the court of appeals, sixth circuit, (54 Fed. Rep. 396,) directly overrule the decision of Judge Hammond in The Illinois White and Cheek, 2 Flip. 383, which is the leading case in opposition to the views herein expressed, and is cited and relied upon by appellant in this case, and, after a careful, elaborate, and able discussion of the questions, and a review of the authorities of The Lottawanna, 21 Wall. 579; The Young Mechanic, 2 Curt. 404; The General Smith, 4 Wheat. 443; and The Guiding Star, 18 Fed. Rep. 263,—in conclusion says:

"It follows from these authorities that the courts of admiralty will not enforce a maritime lien against a vessel for supplies created by a state statute, unless the supplies were furnished on the credit of the vessel, for that is indispensable to the existence of maritime liens of this class."

The decree of the district court is affirmed, with costs.